**UNITED STATES of America,**
**Appellee,**

v.

**Louis PUGLIESE, a/k/a "Feety,"**
**Appellant,**

**No. 327, Docket 27600.**

United States Court of Appeals
Second Circuit.

Argued Feb. 16, 1965.

Decided June 8, 1965.

Robert J. McGuire, Asst. U. S. Atty.
(Robert M. Morgenthau, U. S. Atty.,
John S. Martin, Jr., Asst. U. S. Atty.),
for appellee.

Henry K. Chapman, New York City,
for appellant.

Before WATERMAN, FRIENDLY
and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Defendant was indicted on two counts
of violating the Narcotic Drugs Import
and Export Act, 21 U.S.C. §§ 173, 174.
Count one charged him, in brief, with
having wilfully received, concealed, and

sold a quantity of unlawfully imported heroin on July 13, 1961. Count two charged him with having committed the same offense on July 21, 1961. After a two-day trial before the late Judge Noonan and a jury in the United States District Court for the Southern District of New York, defendant was acquitted on the first count and convicted on the second. He received the mandatory minimum sentence of five years in prison.

The principal witness against defendant was Angel Louis Gonzales, an undercover agent for the Federal Bureau of Narcotics. Gonzales testified that he was introduced to defendant by Freddie Cooper, a narcotics informer, in Cooper's apartment on July 13, 1961. At that time defendant asked Gonzales if he wanted to buy an ounce of heroin, and Gonzales said that he did. After the usual haggling, Gonzales purchased a bag of the drug from defendant for $550. Before he departed Gonzales asked defendant for his telephone number so that he might negotiate future purchases. On July 21, 1961, Gonzales called defendant to say that he wanted another ounce of heroin. Defendant agreed to sell him the drugs and made arrangements for a contact. The two men met in a park near defendant's home and, as before, exchanged an envelope containing narcotics for $550.

Defendant, testifying in his own behalf, described the background of the transactions in such a way as to bolster his defense of entrapment, but did not contradict Gonzales in any important respect. Defendant testified that he was a drug addict who had been initiated into the use of heroin by Freddie Cooper, the narcotics informer who introduced him to Gonzales, and that on July 13, 1961, when the introduction took place, he was looking for a loan so that he might feed his habit. Cooper offered him money if defendant would make a sale of heroin to an acquaintance of Cooper. Defendant at first refused, but when he was unable to borrow money from others, he returned and agreed to Cooper's offer. Cooper instructed defendant on how to deal with the purchaser and gave him the bag of heroin which he was supposed to sell. After the transaction with Gonzales, defendant turned the $550 over to Cooper, and Cooper paid him off in drugs.

Defendant further testified that during the following week Cooper continued to supply him with doses of narcotics, but on July 21, 1961 Cooper withheld the drugs and told defendant to go home to await a telephone call from Gonzales. After receiving the call, defendant returned to the informer's apartment, where he obtained further instructions and an envelope of heroin with which to make the sale, and, when the transaction with Gonzales was completed, defendant delivered the $550 to Cooper, who gave him drugs in return. Defendant's testimony was neither corroborated nor contradicted, Cooper having died before the trial.

■ Defendant appeals his conviction on the ground that the evidence, taken in the light most favorable to the government, established entrapment as a matter of law, and therefore the trial judge should have directed an acquittal on both counts of the indictment. Defendant also claims that the trial judge made several reversible errors in his charge to the jury. Because none of these points were raised in timely fashion at the trial, we shall notice them only if they demonstrate "plain errors or defects affecting substantial rights." Fed. R.Crim.P. 52(b).

According to the often-cited discussion by Judge Learned Hand in United States v. Sherman, 200 F.2d 880, 882 (2 Cir. 1952), the defense of entrapment raises two questions of fact: "(1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence." The trial judge charged the jury that it must determine these two issues.

■■ We need not decide whether defendant's testimony, if true, warranted

a directed verdict in his favor. The jury was entitled to disbelieve defendant's version of the facts and to rely only on the evidence presented by the government. See Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958). Moreover, the jury could rationally conclude, on the basis of Gonzales' testimony, that defendant was predisposed to sell narcotics, within the meaning of Judge Hand's question (2). See United States v. Orza, 320 F.2d 574 (2 Cir. 1963). Therefore, we hold that the evidence did not establish entrapment as a matter of law.

On the other hand, we hold that the trial judge committed plain error in charging the jury on Judge Hand's question (1). The trial judge stated:

"Now on the first question, that is, the inducement, the defendant has the burden of proof. That is, the defendant must sustain the burden of proving that the government agents induced him to commit the crimes charged.

"On the second question, that is, the defendant's willingness or predisposition, the government has the burden of proof."

This charge was in line with the discussion by Judge Hand in United States v. Sherman, supra, at 882–883.

No legal authority has imposed a heavier burden on a defendant for any aspect of the entrapment issue than proof *by a preponderance of the evidence.* See Gorin v. United States, 313 F.2d 641, 654 (1 Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963); Model Penal Code § 2.13(2) (Prop. Offic. Draft 1962). We would not increase this burden on the defendant (if indeed he should bear any burden of proof whatever, a question we do not now reach). However, as the trial judge never expressly delineated defendant's "burden of proof," the jury might well have thought that he meant proof *beyond a reasonable doubt.* As in Gorin v. United States, supra, 313 F.2d at 654:

"The only burden of proof mentioned anywhere in the charge was the bur-

den on the government to prove the essential elements of its case beyond a reasonable doubt. But from this we cannot assume, as the government argues, that the jury would apply this standard only to the government's case and never to the defendants'. On the contrary we think that since proof beyond a reasonable doubt was the only standard mentioned, the jury would naturally infer in the absence of instruction otherwise that when 'burden of proof' was mentioned that was the standard they were to apply, not only to the government but also to the defendants."

This error by the trial judge would have been less prejudicial if the jury had understood the instructions to mean that defendant's only burden was that of showing that the government *initiated* the crime of which he was convicted. Gonzales admitted to having set in motion the sale of narcotics on July 21, 1961, by requesting during their first meeting defendant's telephone number and then by calling defendant before their second meeting to ask for more drugs. Thus the jury was virtually certain to decide this aspect of the entrapment issue in defendant's favor, no matter what his burden of proof appeared to be.

As the trial judge never explicitly defined "inducement" for the jury, however, it is likely that he would have been understood to suggest that defendant had the additional burden of showing that the government *exerted undue pressure* in initiating the sale of narcotics on July 21, 1961. Earlier in his charge the trial judge spoke of "inducement" in terms of "persuasion and representations," in line with Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127, 128 (1963), in which the Court of Appeals for the District of Columbia Circuit characterized "inducement" as involving "importuning and coercive tactics." Defendant relied heavily on his claim that Cooper exerted improper pressure on him to commit the crime of

which he was convicted, by first introducing him to the use of heroin and then by withholding his free supply of the drug. This being a principal point of dispute in the case, the error of the trial judge in not properly charging the jury on "inducement" might well have tipped the scales against defendant.

We also note that the jury was obviously hard put to it to arrive at a decision, for midway in its deliberations it asked for a re-reading of the charge on entrapment, and later it reported that it was unable to agree upon a verdict. The trial judge then delivered a modified Allen charge, and when one of the jurors asked if the jury was obliged to act on both counts in the indictment, the trial judge impliedly answered in the affirmative. After another hour of deliberation the jury came back with an acquittal on count one and a conviction with a recommendation of clemency on count two.

■ Under these circumstances we hold that the trial judge committed "plain errors * . * * affecting substantial rights," plain because the defendant is not obliged to prove "inducement" beyond a reasonable doubt (if indeed he bears any burden of proof whatever on the issue), and substantial because the case was very close and the jury quite likely understood "inducement" not narrowly but as encompassing the crucial issue of improper pressure.[1]

In view of this conclusion, we need not decide whether, as defendant alleges, the trial judge committed other reversible errors under Fed.R.Crim.P. 52(b). Nevertheless, inasmuch as two of defendant's points are likely to arise again in the course of a retrial, we think it advisable to express our opinion on them so as to guide the district court in any further proceedings that may be had.

The trial judge charged the jury:

"[U]nder the law possession of narcotic drugs gives rise to an inference that the narcotics had been imported contrary to law and a further inference that the person in possession had knowledge of such unlawful importation.

"This means that you would be *forced* to convict a defendant who did not explain his possession of such narcotics. In this case, of course, the defendant in effect admits that he has no innocent explanation of his possession of Government Exhibits 4 and 8 * * * " (Emphasis added.)

■ The first paragraph stated the law correctly. As for the second paragraph, however, we have repeatedly held that unexplained possession under 21 U.S.C. § 174 does not *compel* a finding of unlawful importation and guilty knowledge; it merely *permits* such a finding without further proof. United States v. Davis, 328 F.2d 864, 866–867 (2 Cir. 1964); United States v. Evans, 312 F.2d 556 (2 Cir. 1963).

The trial judge also charged the jury:

"The law recognizes that there are two types or kinds of entrapment; there is lawful entrapment and there is unlawful entrapment.

\*       \*       \*       \*       \*

"Where a person has the readiness and willingness to break the law, the mere fact that the government agents provide what appears to be a favorable opportunity is no defense. That is lawful entrapment."

■ Semanticists might favor this distinction between "lawful" and "unlawful" entrapment. See Williams,

---

1. Because the points have not been briefed by either party, we do not decide (1) whether Judge Hand's apportionment of the burden of proof should be reconsidered, and (2) how heavy a burden of proof, if any, the government should bear. See generally Gorin v. United States, supra, 313 F.2d at 652–654; Whiting v. United States, 321 F.2d 72, 75–76 (1 Cir.), cert. denied, 375 U.S. 884, 84 S. Ct. 158, 11 L.Ed.2d 114 (1963); Model Penal Code § 2.13(2); Proposed New York Penal Law §§ 75.05, 55.00 (1964).

Criminal Law § 256, at 785 (2 ed. 1961). According to current usage, however, what the trial judge referred to as "lawful" entrapment is not entrapment at all. See Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). To depart from this usage is to invite needless confusion.

We are grateful to assigned counsel, Henry K. Chapman, for representing defendant in an adept and forceful manner.

Reversed and remanded for a new trial.