**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ingelow Odell SELLS and Howard Michael Jefferies, Defendants-Appellants.**

**Nos. 73-1598, 73-1599.**

United States Court of Appeals, Seventh Circuit.

Heard April 9, 1974.

Decided May 21, 1974.

Lawrence O. Sells, Indianapolis, Ind., for defendants-appellants.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge and NOLAND, District Judge.*

PER CURIAM.

The defendants Sells and Jefferies were convicted at a joint trial of con-

* District Judge James E. Noland of the Southern District of Indiana is sitting by designation.

spiracy to violate 18 U.S.C. §§ 2312 and 2313 and of violating those statutes. Jefferies was tried before a jury and Sells before the Court. Both were convicted on all counts and have appealed. We affirm.

In seeking reversal of their convictions the defendants have raised three issues: (1) whether the warrantless search of Sells' business premises violated the fourth amendment and thereby tainted any evidence flowing therefrom; (2) whether certain testimony admitted at trial was prejudicial hearsay; and (3) whether there is sufficient evidence in the record to support the conviction. Appellant Sells has raised the first issue and Jefferies the second and third.

■ The search complained of by Sells took place on November 2, 1972, and was conducted by two Indiana State Police officers. That search produced evidence which was used as the basis for a federal search warrant issued on November 15, 1972, which produced evidence later admitted at the trial of the defendant. The district court held a suppression hearing and found that there was consent for the search and denied suppression. As consent is a factual issue, United States v. Young, 471 F.2d 109 (7th Cir. 1972), the facts surrounding the search must be briefly set out.

Two to four months prior to the November 2 search, defendant Sells spoke with one of the state police officers in regard to Sells' son's automobile which had been impounded subsequent to an accident. Sells wanted to know why the vehicle had been impounded and was told that they were checking it out because they had heard that Sells might be involved in certain criminal activity involving stolen cars. Sells then told the officer that he had nothing to hide and any time the officer wished to inspect his business he could do so.

Thereafter, on November 2, the officer and another state police trooper went to Sells' used car/junk car dealership and asked to speak to Sells. They were informed by Sells' son that a Mr. Ranson was in charge as Sells was not there. Ranson, who knew both of the officers and knew they were police officers, was then told by the officers that Sells had told them they could look around any time. Ranson told them to go ahead and look and the officers then began inspecting the salvage vehicles which were sitting on the lot.

Shortly thereafter, a Mr. Watkins, who was the manager of the defendant's business, returned and approached the officers after being told by the other employees of their presence. He inquired if he could help them and they repeated the substance of what they had previously told Ranson. Watkins then told them to go ahead and look around and left them. In the course of their inspection of the junked vehicles the officers noticed that certain vehicle identification numbers, which were supposed to be visible through the windshield of the cars, were missing. They then located the numbers from either the inspection sticker on the windshield, or the door plate, and these became the basis for the subsequent federal search warrant.

The district court found both actual consent for the search by the employees and statutory consent under two Indiana statutes. As we agree that there was valid consent given by the defendant's employees, we need not deal with defendant's allegations regarding the defects in the statutory consent.

Appellant Sells has argued that the representation by the police officers to the employees that Sells had given his permission to search, in order to obtain the consent of the employees, amounts to fraud and deceit and makes such consent involuntary.

■ The district court, after hearing testimony, taking evidence, viewing the witnesses and resolving conflicts in the evidence, found as a matter of fact that defendant Sells did tell the officer that he could look around any time he wished. Where findings of fact are in-

volved appellate courts must be reluctant to interfere unless there is insubstantial evidence in the record to support the trial court's conclusion. United States v. Hayward, 471 F.2d 388 (7th Cir. 1972); United States v. Young, 471 F. 2d 109 (7th Cir. 1972), cert. denied, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973); Byrd v. Lane, 398 F.2d 750 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564 (1969). *Cf.* United States v. Sicilia, 475 F.2d 308 (7th Cir. 1973).

■ The trial court further found that consent was given for the search by two of Sells' employees and, while not relying on the consent earlier given by Sells himself, found the employees' consent to be valid. We do not find this determination to be clearly erroneous.

The question of whether the consent given by the employees was voluntary or was given as a result of duress or coercion is one of fact to be determined from a totality of all the circumstances surrounding the case. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *See also* United States v. Sicilia, 475 F.2d 308 (7th Cir. 1973); United States v. Young, 471 F. 2d 109 (7th Cir. 1972); United States v. DeMarsh, 360 F.Supp. 132 (E.D.Wis. 1973).

In the instant case, the conflicts in the evidence were resolved by the district court and it found that Sells had given consent. Thus, when the police officers informed Sells' employees that Sells had told them they could look around, they were not deluding the employees nor attempting to gain entry through fraudulent means. Further, the evidence shows that some of the employees, if not all, knew both officers and knew they were police officers. It is, therefore, unlikely that the employees were "overly intimidated by the approach of a police officer" whom they knew so as to render the consent involuntary. United States v. Hayward, 471 F.2d 388, 390 (7th Cir. 1972). Therefore, we do not find the determination

by the district court, that the consent given by the employees was voluntary, clearly erroneous.

Appellant Sells also argues that the only employee who could have given consent for the search was Watkins, the manager of the business, and not Ranson. The Supreme Court has recently set forth the test to be used to determine who may bind another by consenting to a search.

In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Court said that when the government seeks to justify a warrantless search by showing voluntary consent, it may do so by showing that "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effect sought to be inspected." *Id.* at 993.

Common authority was defined as "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable" for the searching officers to believe that the person giving the consent had the authority to do so. *Id.* at n. 7.

■ Consent is a factual question and, so too, is the question of the appearance of authority to give it. Applying *Matlock* to the facts and circumstances which were presented to the district court, we do not find that the Court erred in viewing the employee Ranson as being one whom the police officers could reasonably believe had the authority to consent to the search. They were informed by defendant Sells' son that Ranson was in charge when they asked for the defendant. Ranson knew them and knew they were police officers. Further, he made no statement that they should wait for Watkins or that he could not authorize the search. In short, to the officers, he had the necessary appearance of authority demanded by *Matlock* to give consent to search the premises. Therefore, we conclude that the district court was correct in finding that the November 2 search

was a valid warrantless search and that the evidence obtained subsequent thereto was not tainted.

Appellant Jefferies has argued that there is insufficient evidence to sustain his conviction and that certain evidence was admitted over objection which was prejudicial hearsay.

At trial the government presented a witness who was the security officer for Allison Division of General Motors in Indianapolis. The witness testified to an occurrence in the plant parking lot which related to one of the sixteen alleged overt acts of the conspiracy.

The witness related the incident and stated that one of the occupants identified himself as the defendant Sells by showing the witness an Indiana driver's license with that name on it. When he began to identify the defendant Jefferies, counsel interposed a preliminary question and asked if the witness could physically identify either of the persons he saw. When the witness related that he could not, counsel made an objection which was overruled. The witness then testified that the second person identified himself as the defendant Jefferies by showing a Florida driver's license with that name on it, and he related the substance of his conversation with that person. No further objection was made by counsel.

The objection made was general; "We will object." However, it appears from the preliminary question that the objection was directed at the witness' testimony regarding the name on the Florida driver's license. No further objection was raised by counsel regarding the substance of the conversation related by the witness.

 We believe the ruling by the district court was correct. The testimony of the witness, at least to the extent of the name printed on the driver's license, was not hearsay as he was merely testifying to what he saw. As such, it was

testimony regarding a fact known to him about which he could be cross-examined. *See* NLRB v. Tex-Tan, Inc., 318 F.2d 472 (5th Cir. 1963). While his inability to physically identify the appellant may have a bearing, such inability is directed to the weight the trier of fact may wish to give the testimony, not its admissibility. As no further objection was raised by counsel to the subsequent testimony, no determination is necessary as to its character.

Finally, we have reviewed the record herein and find no support for appellant Jefferies' contention that there is insufficient evidence to support his conviction. Where there is conflict in the evidence it clearly was resolved by the trier of fact, and such resolution does not appear to be clearly erroneous. There was substantial evidence to arrive at the decision reached by the jury and the Court.

Consequently, the judgments of conviction are

Affirmed.